1
2
3        UNITED STATES DISTRICT COURT
4        EASTERN DISTRICT OF CALIFORNIA
5

| | |
|---|---|
| **GARY R. WELLS,**<br><br>             **Plaintiff,**<br><br>   **v.**<br><br>**SAN JOAQUIN VALLEY RAILROAD, a corporation**<br><br>             **Defendant.** | **1:06-CV-00678 OWW NEW**<br><br>**MEMORANDUM DECISION AND ORDER RE DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. 12)** |

## 1.   INTRODUCTION

Defendant San Joaquin Valley Railroad ("SJVR" or "Defendant") brings a motion for summary judgment as to Plaintiff Gary R. Wells' ("Wells" or "Plaintiff") claims.  Plaintiff brings his action under the Federal Employer Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, alleging he suffered severe injuries during his employment as a locomotive engineer on account of Defendant's failure to provide a reasonably safe work place under the FELA and California Public Utilities Commission General Order ("GO") No. 118.

## 2.   PROCEDURAL BACKGROUND

Plaintiff filed a complaint on June 6, 2006.  (Doc. 1, Complaint.) On October 11, 2006, Defendant answered the Complaint. (Doc. 7, Answer to Complaint.) On July 19, 2007, Defendant filed a motion for summary judgment. (Doc. 12-1, Motion for Summary Judgment.)  Plaintiff opposed the motion on August

**1**

1   24, 2007. (Doc. 14-1, Plaintiff's Opposition.) Plaintiff filed

2   evidentiary objections to Defendant's declarations on August 24,

3   2007. (Doc. 15, Plaintiff's Evidentiary Objections.) Defendant

4   replied on August 31, 2007. (Doc. 16, Reply to Opposition.)

5   Defendant filed evidentiary objections to Plaintiff's

6   declarations on August 31, 2007. (Doc. 17, Defendant's

7   Evidentiary Objections.)

8                    **3.   FACTUAL BACKGROUND**

9   **A.    Undisputed Facts**

10      1. Plaintiff brings this personal injury action under the

11  FELA. (Doc. 14-2, Plaintiff's Separate Statement of Disputed and

12  Undisputed Material Facts in Support of Opposition to Defendant

13  San Joaquin Valley Railroad's Motion for Summary Judgment

14  ("PSDUF") No. 1.)

15      2. Plaintiff is a railroad engineer who started working for

16  SJVR on March 25, 1997. (PSDUF No. 3.)

17      3. Prior to beginning employment with SJVR, Plaintiff worked

18  as a railroad engineer for 18 years with the Australian Railroad.

19  (PSDUF No. 4.)

20      4. On the day of the alleged incident, Plaintiff was working

21  Job. 619, which starts at Exeter and ends at Sanger. (PSDUF No.

22  9, 26.)

23      5. The alleged incident occurred between 6:00 p.m. and 6:30

24  p.m. at Lindsay Foods, where Plaintiff went to retrieve a car in

25  order to bring it back to Exeter. (PSDUF No. 12.)

26      6. At approximately 6:10 p.m., Plaintiff rode a single

27  locomotive engine to pick up a car at Lindsay Foods. (PSDUF No.

28  23.)

**2**

7. The train ride to Lindsay Foods takes approximately 20 minutes. (PSDUF No. 24.)

8. During the alleged incident Plaintiff cannot tell where he was looking at the moment his ankle twisted. (PSDUF No. 31.)

9. On the way back from Lindsay Foods to Exeter, after the alleged incident, Plaintiff called trainmaster Troy Forbes on his cell phone and told him that he twisted his ankle but that he wanted the conversation off the record because he was wearing tennis shoes. (PSDUF No. 33-34.)

10. Several weeks after the accident, Plaintiff returned to take pictures of the location where he claims he was injured. (PSDUF No. 36.)

11. A formal investigation was held by SJVR on March 27, 2007 and Plaintiff was terminated for violating the safety rules of SJVR. (PSDUF No. 41.)

12. At the formal investigation Plaintiff testified, and was represented by Pat Springman, Local Chairman of United Transportation Union.(PSDUF No. 42.)

**B.    Disputed Facts**

Plaintiff brings this complaint alleging on February 15, 2006 he suffered a right ankle injury on a walkway with poor footing conditions when he stepped down from a locomotive. (PSDUF No. 2.)

Prior to the alleged incident, Plaintiff was trained on rules, regulations training, road trials and getting on and off locomotives and equipment, including maintaining three-point contact. (PSDUF No. 5, 7 and 8.)  He was required to and did become familiar with Defendant's safety and operating rules.

**3**

(PSDUF No. 6.) Plaintiff believed he knew his job thoroughly and did not request further training. (PSDUF No. 11.)  The "Slip, Trip and Fall Prevention" section of SJVR's Transportation Safety Procedures advised on wearing high-top boots laced up all the way to reduce the risk of falls. (PSDUF No. 18.)  Specifically, SJVR Safety Rule T-16 required Plaintiff to wear 6-inch high minimum, lace-up work boots with safety toe, near 90-degree heel, and leather or leather-like upper. (PSDUF No. 17.)  Defendant claims that the purpose of Rule T-16 is to minimize injuries to trainmen, including ankle-twisting injuries while walking on uneven surfaces such as ballast. (PSDUF No. 19.)  Plaintiff knew he was wearing his below-ankle velcro-type tennis shoes on the day of the alleged incident in violation of Defendant's safety rules but had left his boots in the car at his house. (PSDUF No. 16, 20-22.)

    There was nothing unusual about the day of the alleged incident and Plaintiff was doing his job that he does 90% of the time. (PSDUF No. 10, 15.)  In particular, Plaintiff had performed the same job at the Lindsay location approximately five times before the day of alleged incident. (PSDUF No. 13.)  Plaintiff had got on and off several times at the Lindsay location for line switches and coupling of cars with no difficulties. (PSDUF No. 25.)  Defendant had never received any complaints regarding footing or ballast conditions at the Lindsay location. (PSDUF No. 14.)

    Prior to Plaintiff descending the stairs from the locomotive, he shined the lantern on the area where he was detraining and did not see anything unusual, but Plaintiff

**4**

alleges the lantern did not provide adequate illumination and he could not see the ground in detail. (PSDUF No. 28.)  Plaintiff alleges the switch lantern, while containing fresh batteries and worked properly, did not provide adequate illumination. (PSDUF No. 27.)  Nothing distracted Plaintiff's attention as he descended the stairs, but he does not recall whether he looked down while descending nor whether he looked down when he stepped on the ground. (PSDUF No. 29.) Plaintiff alleges as he stepped off the train, onto a walkway with poor footing conditions, he twisted his right ankle and felt his right foot move inward. (PSDUF No. 30.) Plaintiff alleges he identified the condition of the walkway where he stepped down from the locomotive engine, testifying at a company hearing that his ankle injury was caused by "loose footing" and "a hole, depression in the walkway," and he saw "uneven ground." Plaintiff also alleges that he identified where he was injured on: (1) photographs he took a month after the alleged incident; (2) Exhibit B-3 to Defendant's photograph; and (3) on Defendant's diagram, Exhibit A,. (PSDUF No. 37.) Defendant alleges that at its formal investigation hearing there was never any claim made by Plaintiff or his union representative that there were any hazardous conditions at the accident scene, nor have there been any such complaints since the accident. (PSDUF No. 43.)  Plaintiff disputes this allegation and claims he testified at the formal accident hearing held by Defendant that there was loose footing, a hole, a depression in the walkway that caused his ankle to twist. (PSDUF No. 43.) Defendant also contends that Plaintiff did not mark the area of the alleged incident. (PSDUF No. 32.)  Defendant also alleges Plaintiff

**5**

cannot tell exactly where he stepped down, cannot locate within a
fifty-foot radius the area where he stepped, and cannot tell
whether he stepped between two railroad ties or on the edge of
one. (PSDUF No. 37-38, 40.)  Defendant contends Plaintiff cannot
tell if he stepped on anything in particular, including whether
it was a smooth or uneven surface. (PSDUF No. 37, 40.)  Defendant
also asserts that trainmaster Federick Mattera inspected the
general area where the incident occurred, and found no defects
and took no exceptions to the footing and ballast conditions.
(PSDUF No. 35.)

### 4.  STANDARD OF REVIEW

**A.   Summary Judgment Standard**

Summary judgment is warranted only "if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact."  Fed. R. Civ. P. 56(c);
*California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998).
Therefore, to defeat a motion for summary judgment, the non-
moving party must show (1) that a genuine factual issue exists
and (2) that this factual issue is material. *Id*.  A genuine issue
of fact exists when the non-moving party produces evidence on
which a reasonable trier of fact could find in its favor viewing
the record as a whole in light of the evidentiary burden the law
places on that party. *See Triton Energy Corp. v. Square D Co.*,
68 F.3d 1216, 1221 (9th Cir. 1995); *see also Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 252-56 (1986).  Facts are "material"
if they "might affect the outcome of the suit under the governing
law." *Campbell*, 138 F.3d at 782 (quoting *Anderson*, 477 U.S. at

**6**

248).

The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).

> [T]he plain language of Rule 56(c) mandates the
> entry of summary judgment, after adequate time
> for discovery and upon motion, against a party
> who fails to make a showing sufficient to
> establish the existence of an element essential
> to the party's case, and on which that party
> will bear the burden of proof at trial.  In such
> a situation, there can be "no genuine issue as
> to any material fact," since a complete failure
> of proof concerning an essential element of the
> nonmoving party's case necessarily renders all
> other facts immaterial.

*Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986).  The more implausible the claim or defense asserted by the nonmoving party, the more persuasive its evidence must be to avoid summary judgment. *See United States ex rel.  Anderson v. N. Telecom, Inc.*, 52 F.3d 810, 815 (9th Cir. 1996).  Nevertheless, the evidence must be viewed in a light most favorable to the nonmoving party. *Id.; Anderson,* 477 U.S. at 255.  A court's role on summary judgment is not to weigh evidence or resolve issues; rather, it is to determine whether there is a genuine issue for trial.  *See Abdul-Jabbar v. G.M. Corp.*, 85 F.3d 407, 410 (9th Cir. 1996).

**7**

**B.**   **Negligence under FELA**

Under FELA, employees are permitted to sue their employer, the railroad, if they are injured while on the job.  Recovery is permitted if injury results "in whole or in part from the negligence of" the railroad, or due to any "defect or insufficiency, due to its negligence, in its...tracks, roadbed,...or other equipment." 45 U.S.C. § 51.  An employee bringing a FELA claim must prove that the railroad was negligent and that such negligence was the cause of the injury. *Atchison, T. & S.F.R. Co. v. Toops*, 281 U.S. 351, 354 (1930); *Northwestern P. R. Co. v Bobo*, 290 U.S. 499, 502-503 (1934)("The jury may not be permitted to speculate as to its cause, and the case must be withdrawn from its consideration, unless there is evidence from which the inference may reasonably be drawn that the injury suffered was caused by the negligent act of the employer.").  The employee must prove negligence on the part of the railroad in a FELA claim. *Tennant v. Peoria & Pekin P.U. Ry. Co.*, 321 U.S. 29, 32 (1944).  Each and every element as is required under a common-law negligence action must be proved in a FELA negligence action or the cause of action fails. *Davis v. Burlington Northern, Inc.*, 541 F.2d 182, 185 (8th Cir.) *cert. denied,* 429 U.S. 1002 (1976). In determining negligence on the part of the railroad the general rule is "the lack of due care under the circumstances; or the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation; or doing what such a person under the existing circumstances would not have done." *Tiller v. Atlantic Coastline R. Co.*, 318 U.S. 54, 67 (1943). "[R]easonable forseeability of harm is an essential

**8**

ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & Ohio Railroad Co.*, 372 U.S. 108, 117 (1963). The sufficiency of evidence for a FELA negligence claim however differs slightly in that is it less burdensome than a straight common-law negligence claim.  If the employer's negligence played "*any part, even the slightest*, in producing the injury...for which damages are sought" the burden has been met. *Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506 (1957)(emphasis added).

**I.   Contributory Negligence**

Contributory negligence does not diminish the liability of the railroad for recovery under FELA, except to limit the damages available to the employee.  "[T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee..." 45 U.S.C. § 53.  However, "[t]he act does not make the employer an insurer." *Inman v. Baltimore & Ohio R. Co.*, 361 U.S. 138, 140 (1959).  If plaintiff is found contributory negligent, a reduction of the award of damages in an amount proportionate to the negligence contributed will be assessed.

**C.   Negligence under FELA and California Public Utilities Commission, GO No. 118**

The contributory negligence defense to damages is not however available where "the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee." 45 U.S.C. § 53; *Johnson v. Union Pacific R.R. Co.*, No. C-03-04574 RMW, 2004 WL 2403844, at

*5 (N.D.Cal. Oct. 27, 2004). Under FELA § 54a, "A regulation, standard or requirement in force, or prescribed...by a State agency that is participating in investigative and surveillance activities under section 20105...is deemed to be a statute under sections 53 and 54 of this title." 45 U.S.C. § 54a.  The employee shall not be held to be guilty of any contributory negligence if the employer's negligence involved a violation of a safety statute.  The railroad employer is responsible for all damages arising out of the injury.  The California Public Utilities Commission, ("PUC") GO No. 118 is applicable to railroad corporations operating in the State of California, and is a safety statute contemplated to fall under 45 U.S.C. § 53. *See* Judge Schubb's decision in *Wagner v. Union Pacific Railroad Company,* No. CIV. S-03-0582 (E.D. Cal. July 19, 2004), holding GO No. 118 to be a qualifying safety statute under FELA § 53[1].  GO No. 118 governs the construction, reconstruction and maintenance of walkways adjacent to railroad trackage and requires railroad companies operating in the State of California to file their standards for construction, reconstruction and maintenance of walkways. GO No. 118 provides that "walkways shall provide a reasonable, regular surface with gradual slope not to exceed one inch to eight inches."  "The purpose...is to provide railroad employees with a safe working environment."  *Southern Pacific Transp. Co. v. Public Utilities Comm'n of State of Cal.*, 647 F.Supp. 1220, 1222 (N.D.Cal. 1986).

---

[1] The parties here do not dispute GO No. 118 is deemed a statute under FELA § 53 nor that it is a statute enacted to protect the safety of railroad employees.

1

**5.  DISCUSSION**

2

**A.   Duty under FELA**

3      Under FELA, the railroad has a duty to provide employees

4  with a safe place to work. *Ragsdell v. Southern Pacific Transp.*

5  *Co.*, 688 F.2d 1281, 1283 (9th Cir. 1982)(citing *Bailey v. Central*

6  *Vermont Ry.*, 319 U.S. 350, 352-53 (1943)).  "The duty is a

7  'continuing one' and requires a jury to weigh a myriad of

8  factors-including the nature of a task, its hazards and

9  efforts-in determining whether an employer furnished an employee

10 with a reasonably safe place to work.  This continuous duty to

11 provide a safe place to work is broader than the general duty to

12 use reasonable care." *Id.*

13

**B.   Evidence of SJVR's Breach of Duty to Wells**

14     According to Defendant, Plaintiff has insufficient evidence

15 that his alleged injury was caused by any breach of duty by

16 Defendant. (Doc. 12-1, Motion, 8:19-20.)  Defendant points to

17 alleged failures in Plaintiff's evidence including Plaintiff's

18 inability to pinpoint and identify: (1) within a fifty-foot

19 radius, where the alleged incident occurred; (2) where Plaintiff

20 was looking when he descended from the locomotive; (3) the type

21 of surface he stepped onto; and (4) whether he stepped on a

22 railroad tie or between railroad ties. (*Id.*, 8:20-25.)  Defendant

23 argues summary judgment is appropriate as Plaintiff cannot

24 establish the defect that should or could have been remedied by

25 Defendant that caused Plaintiff's injury.

26     In response, Plaintiff argues the alleged hazardous

27 conditions in the area of the alleged incident were "ubiquitous

28 at and around the accident site" (Doc. 14-1, Plaintiff's

Opposition, p. 2:15-17, 5:18-25, 6:1-14.)   Anywhere he would have set his foot would have caused the alleged injury to occur. (*Id.*, p. 2:16-17.)   The photocopy images of the photographs, provided and referenced by both Defendant and Plaintiff in their arguments, are obscure and difficult to assess.   Discerning from the photographs whether the conditions alleged by Plaintiff were pervasive is not feasible. *See* Doc. 14-3, Declaration of John Furstenthal ("Decl. Furstenthal"), Exhibit 6 and 7; and Doc. 14-4, Declaration of Edward B. Stanton ("Decl. Stanton"), Exhibits 2, 5 and 6.

Plaintiff cannot identify where he was looking when he descended from the locomotive, but he argues that he identified the type of surface and conditions he stepped into and that he stepped onto a walkway. (Doc. 14-5, Declaration of Gary Wells ("Decl. Wells"), ¶¶ 2,6-9.) "When I stepped off the engine there was loose footing and apparently some sort of hole or depression in the walkway..." (*Id.*, ¶ 6.) "After I twisted my ankle, I looked at the place where I stepped and noticed a hole or depression in the walkway." (*Id.*, ¶ 7.)   Plaintiff also refers to his testimony provided in the formal investigatory hearing before SJVR held on March 27, 2006 concerning his alleged accident, where he testified that his was caused by "loose footing...a hole, a depression in the walkway." (Id., ¶ 8 and Exhibit 1.)

### I.   **Conflicting Testimony**

Defendant argues that Wells' declaration, that he stepped on a "depression or hole," should be disregarded.   Defendant asserts that Plaintiff did not so testify in his deposition and Plaintiff cannot create a triable issue of material fact by providing a

1  declaration that contradicts his deposition testimony. (Doc. 16,

2  Reply, p. 3:20-21; Doc. 17, Defendant's Evidentiary Objections, §

3  2.)  The general rule in the Ninth Circuit is that a party cannot

4  create an issue of fact by an affidavit contradicting his prior

5  testimony. *Kennedy v. Allied Mutual Insurance Co.*, 952 F.2d 262,

6  266 (9th Cir. 1991); *Foster v. Arcata Associates*, 772 F.2d 1453,

7  1462 (9th Cir. 1985); *Cleveland v. Policy Mngt. Systems* Corp.,

8  526 U.S. 795, 806 (1999).

9      However, an affidavit that conflicts with deposition

10  testimony is only considered a "sham" for purposes of disposing

11  of a case on summary judgment when it is shown to "create" an

12  issue of fact in order to avoid summary judgment. *Kennedy v.

13  Allied Mutual Insurance Co.*, 952 F.2d at 266.  If the affidavit

14  attempts to explain the testimony at deposition in which an

15  individual was confused, then it may preclude summary judgment.

16  "[T]he district court must make a factual determination that the

17  contradiction was actually a "sham." *Id.*, at 267.

18      Plaintiff asserts in his declaration that his deposition was

19  taken over a year after the accident and his recollection was

20  refreshed thereafter as to his earlier testimony on March 27,

21  2006.  He was able to recollect that his "right ankle injury was

22  caused by loose footing and a hole or depression in the walkway."

23  (Doc. 14-5, Decl. Wells, ¶ 8.)  Plaintiff asserts in his

24  declaration that a review of the photograph he had taken, Exhibit

25  D-1, about which he was questioned at his deposition,

26  demonstrates he could not have stepped in between railroad ties

27  or the edge of a railroad tie due to the width of the locomotive

28  which would have extended "beyond the length of the ties." (*Id.*,

**13**

1   ¶ 9.)  Plaintiff reasons he only could have "stepped onto the

2   uneven ground of the walkway where there was a hole or

3   depression." (*Id.*)   This is an issue that concerns Plaintiff's

4   credibility and the physical condition of the walkway.   Plaintiff

5   testified under oath at his investigatory hearing as to the

6   location of the alleged injury, the conditions of the walkway and

7   the cause of his alleged injury.   The discrepancy in Plaintiff's

8   testimony is sought to be to be explained by failure of

9   recollection.   This does not justify a finding that the

10  discrepancy was a "sham" as a matter of law rather it raises an

11  issue of credibility.  *Kennedy*, 952 F.2d at 267.   Defendant's

12  objection is **SUSTAINED** as to Plaintiff's declaration.

13  **C.**   **Hazardous Conditions and GO No. 118 Violation**

14       **I.**   **Evidence of Violation of GO No. 118**

15       Defendant argues that Plaintiff makes general unfounded

16  allegations that the condition of the tracks at the location of

17  the alleged incident violated GO No. 118.   (Doc. 12-1, Motion, p.

18  9:7-8.) Further, there are no witnesses to the alleged

19  violations, no experts opining that tracks violated GO No. 118

20  and no documents to support Plaintiff's theory. (*Id.*, p. 9:9-12.)

21  Plaintiff rejoins that he testified at his investigatory hearing

22  a month after the alleged incident before the SJVR that he

23  stepped on uneven ground or a hole or depression in the walkway.[2]

24  (Doc. 14-5, Decl. Wells, ¶ 8; Doc. 14-4, Decl. Stanton, Exhibit

25  4, March 27, 2006 Formal Hearing Transcript, p. 43.)   Plaintiff

26

27       [2] Q. Do you recall exactly where you stepped in or, or what caused you
    to twist your ankle?
28       A. It was loose footing.  It was-looking down at the ground was fine and
    when I stepped off there was apparently a hole, a depression in the walkway.

**14**

re-confirmed the conditions of the area where he stepped down from the locomotive at his deposition a year later, citing "broken ties, uneven ground."[3] (Doc. 12-1, Motion, Exhibit A, March 9, 2007 Deposition Transcript of Gary Wells, p. 79:24-25-80:1-5.)  Plaintiff asserts photograph D-1, identified as a photograph of the scene where the alleged incident occurred, depicts a "depression in the walkway with unevenly scattered ballast and debris." (Doc. 14-5, Decl. Wells, ¶ 9.). Plaintiff asserts the photographs provided by both Plaintiff and Defendant, show improper and poor footing conditions.  Defendant replies that trainmaster Federick Mattera inspected the area a few days after and found no defects or hazards. (Doc. 12-1, Motion, p. 12:16-17.)

Plaintiff provides expert testimony by track and walkway expert, Edward Stanton ("Stanton"), supporting the alleged GO No. 118 violations.  Stanton reviewed Plaintiff's deposition testimony, formal hearing testimony before Defendant on March 27, 2006, and Plaintiff's and Defendant's photographs. (Doc. 14-4, Decl. Stanton, ¶ 4.)  Stanton claims he is a railroad track and track structures consultant with over forty years experience in railroad construction, rehabilitation and maintenance of way projects. (*Id.*, ¶ 1.). From 1958 to 1987, his employment involved construction, maintenance and rehabilitation of railroad tracks

---

[3] Q. Well, after your foot turned inward, did you look at the place where you had stepped?
A. Did I look at the place where I stepped?
Q. Yes.
A. Yes.
Q. Okay.  What did you see?
A. Broken ties, uneven ground.

and walkways for Class I railroads, for which SJVR falls under. (*Id.*, ¶ 3.)  He states he "was required to know the track structure standards set forth by the Federal Rail Administration, "FRA," and walkway standards set forth by PUC, including being responsible for ensuring railroads were compliant with FRA regulations and/or GO 118." (*Id.*)

Upon a review of the photographs, Stanton finds: (1) In Exhibit D-1, the measured slope is 10.5 degrees when the standard under GO No. 118 is about 3.5 degrees, (Doc. 14-4, Decl. Stanton, ¶ 6.) and (2) Exhibit D-1 depicts a "bowl-shaped depression approximately 6 feet in length and 0.5 feet in depth," which is conspicuous, hazardous and non-conforming. (*Id.*, ¶ 15.).  Stanton also cites to scouring of walkway material in photographs marked "B" from Plaintiff's deposition testimony. "The scouring has created holes, depressions–leaving an irregular surface on the walkway." (*Id.*, ¶ 12.)  Stanton points to "mounds" in photograph B-5 which he claims create "uneven ground and a tripping or stumbling hazard, particularly at night in areas absent of artificial lighting." (*Id.*) Stanton also opines to other conditions that create poor footing conditions including the type of ballast that appears in photographs marked "D," noting that typical industry practice for walkway surfaces is "level, compact roadbase (1" or smaller) or yard ballast (1-1/2" and smaller)," and it appears from the photographs [D-1, D-7, D-8, D-9 and D-10], that ballast is 3/8" to 1/2...and fowled with...sand material." (Doc. 14-4, Decl. Stanton, ¶¶ 13-14.). He notes that suitable walkway material consists of material that interlocks with adjoining material, eliminating any shift of material

**16**

underfoot but that it appears in photographs D-1, D-7, D-8, D-9 and D-10 that material on the walkway consists of material that prevents interlocking.  Stanton concludes upon review of the materials, including photographs and testimony, "the loose, unevenly scattered rocks and debris on top of the dirt area alongside the track contributed to the aforesaid poor footing conditions." (*Id.*, ¶ 18.)

Whether the railroad did and could provide safe walkways is a factual issue.  The Stanton opinion raises a genuine issue of material fact regarding whether the walkway conditions were properly maintained and unsafe for walking, and in violation of GO No. 118.  Whether the manner in which the Plaintiff stepping onto the walkway was reasonable, whether the walkway was hazardous, and whether the railroad was negligent in maintaining the walkway is a genuine issue of material fact for trial.  If as Plaintiff asserts, the walkway's condition violated GO No. 118, a statute enacted for the safety of railroad workers, it could establish negligence on the part of Defendant. Under a FELA claim, Plaintiff need only show partial liability not entire liability for injury, therefore the issue of what role his tennis shoes played in contributing to the injury is a genuine issue of material fact for trial.

> **a.    Admissibility of Declaration of Edward Stanton under Rule 702 of the Federal Rules of Evidence**

Defendant argues that Stanton's declaration fails to meet the requirements of Rule 702 of the Federal Rules of Evidence ("Rule 702") and therefore is inadmissible to create a triable issue of material fact.  (Doc. 16, Reply to Opposition, p. 3-6;

Doc. 17, Defendant's Evidentiary Objections, § 3.)  Federal Rules
of Evidence 702 governs the admissibility of expert testimony:

> If scientific, technical, or other specialized
> knowledge will assist the trier of fact to understand
> the evidence or to determine a fact in issue, a witness
> qualified as an expert by knowledge, skill, experience,
> training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is
> based upon sufficient facts or data, (2) the testimony
> is the product of reliable principles and methods, and
> (3) the witness has applied the principles and methods
> reliably to the facts of the case.

Fed.R.Evid.702.

"[T]he advisory committee notes emphasize that Rule 702 is
broadly phrased and intended to embrace more than a narrow
definition of qualified expert." *Thomas v. Newton Intern.
Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994) (Longshoreman
with 29 years experience in various positions for numerous
stevedore companies lays the minimal foundation knowledge, skill
and experience required to give "expert" testimony on working
conditions of experienced long shore personnel) "Expert opinion
evidence is itself sufficient to create a genuine issue of
disputed fact sufficient to defeat a summary judgment motion."
*Id.*, at 1270. Stanton has 45 years experience working in the
railroad industry in areas of "rail construction, rehabilitation,
and maintenance of way projects for Class I railroads whose
tracks are used by short line railroads," such as SJVR. (Doc. 14-
4, Decl. Stanton, ¶ 1.) He was responsible for ensuring

**18**

"construction, maintenance and rehabilitation projects" complied with FRA and GO No. 118. (*Id.*, ¶ 3.). Thus, Stanton is foundationally qualified as an "expert" in rail and walkway construction, rehabilitation and maintenance.

Defendant argues that Stanton's declaration contains improper legal opinion. Defendant cites *Marx & Co., Inc. v. The Diners' Club, Inc.*, 550 F.2d 505, 508; *see also Aguilar v. International Longshoremen's Union*, 966 F.2d 433, 447 (9th Cir. 1997) (matters of law are for the court's determination not that of an expert witness); *CFM Communications, LLC v. Mitts Telecasting Co.*, 424 F.Supp.2d 1229, 1233 (E.D.Cal. 2005)(Expert witness in field of communications law or FCC matters was prohibited from testifying about how FCC law applied to the facts of this case.).

Stanton's opinion that GO No. 118 is the applicable law is an improper legal opinion, as is the opinion that Defendant violated GO No. 118 or any other statute.  The objection is **SUSTAINED** in part as to these legal conclusions.

Defendant objects that Stanton's declaration is inadmissible because it fails to rely on established facts, including Plaintiff's "sham" declaration and various photographs labeled "D" that Defendant claims do not show location of incident. Plaintiff's affidavit has not been found a "sham."  The disputed evidence on which the opinion is based does not lack foundation as Plaintiff identified the photographs as the scene of the incident in his declaration and at his deposition, albeit not within a fifty-mile radius.  Plaintiff also declared that the conditions in the pictures were pervasive and that any place

**19**

1  Plaintiff stepped was poor footing and a hazardous condition.

2  (See Doc. 14-1, Plaintiff's Opposition, p. 2:15-17, 5:18-25, 6:1-

3  14.)

4       Defendant attacks Stanton's declaration for lack of

5  foundation regarding the measurements Stanton proffers for the

6  hole or depression, arguing this opinion rests solely on his

7  examination of photograph D-1.  Plaintiff in his declaration

8  identified photograph D-1 as the photo he took of the alleged

9  accident site.  Stanton performed measurements on the photograph,

10 providing among other data, distances and slope measurements.

11 However, Defendant offers no competing expert testimony on

12 measurement of the photographs or on the inability to measure

13 based on the photographs presented.

14      Defendant's object to Stanton's declaration claiming lack of

15 precision in the measurement of the pictures. Arguing Stanton

16 does not know how far away the photo was taken from the alleged

17 site and his lack of site visitation.  However, such arguments go

18 to the weight not the admissibility of the testimony.

19 Defendant's objections to Stanton's declaration is **OVERRULED** in

20 part as to violating Rule 702 of the Federal Rules of Evidence.

21 **II.   Evidence of Causal Nexus between Alleged Defect of
   Violation and Alleged Injury**

22

23      Defendant argues that if arguendo Plaintiff could

24 demonstrate a defect or violation of GO No. 118 at the scene of

25 the alleged incident, there is no evidence of causal nexus

26 between alleged defect or violation and Plaintiff's injury. (Doc.

27 12-1, Motion, p. 9:16-19.) Defendant cites numerous court FELA

28 decisions where plaintiff failed to show causation between the

**20**

violation of a safety regulation and an injury. Plaintiff however, has provided expert testimony on the hazardous conditions of the walkway and the resulting injury.  Plaintiff testified and asserts in his affidavit that he looked, after his right ankle twisted, where he stepped and saw uneven ground and the loose footing, and depression in the ground which was the cause of his injury.  Assuming Defendant violated GO No. 118, a safety statute designed to provide Plaintiff with safe footing, it breached its duty to Plaintiff. *See Southern Pacific Transp. Co.*, 647 F.Supp. at 1222.  Under FRA § 213.231 railroads are required to visually inspect track structures on a regular schedule proscribed under the statute and under certain conditions designed to ensure proper visual inspection: "Each inspection shall be made by foot or by riding over the track in a vehicle at a speed that allows a person making the inspection to visually inspect the track structure for compliance with this part." FRA § 213.231(a).

Plaintiff argues a reasonable inference can be drawn that the required FRA visual inspection at regular intervals would have disclosed to Defendant non-compliance of the walkway with GO No. 118. (Doc. 14-1, Plaintiff's Opposition, p. 15:15-17.) Defendant should have identified and corrected violations of GO No. 118. Stanton opines that a "reasonable inference from the FRA inspection requirements is that a visual inspection of the track would have alerted the railroad that the walkway alongside the track was not in compliance with General Order No. 118." (Doc. 14-4, Decl. Stanton, ¶ 17.)  Plaintiff's argue, and provide evidence, that the unsafe footing conditions on the walkway would

**21**

1  have been disclosed by the visual inspections required under FRA,

2  providing actual or constructive notice to Defendant.

3      Defendant argues, there were no unsafe or defective footing

4  conditions, citing to their visual inspection by trainmaster

5  Frederick Mattera, shortly after the alleged incident and

6  claiming SJVR had received no prior complaints. Defendant cites

7  to trainmaster Frederick Mattera's visual inspection three days

8  after the alleged incident where he found no defects and had

9  received no prior complaints regarding footing or ballasting

10 conditions in the area prior to alleged incident. (Doc. 12-3,

11 Declaration of Frederick Mattera, ¶¶ 5-6.)  Defendant claims

12 rather the causation was Plaintiff's negligence in wearing tennis

13 shoes in violation of its safety regulations.

14     Defendant argues that the sole proximate cause of

15 Plaintiff's injury was Plaintiff's negligence in wearing tennis

16 shoes on the day of the alleged incident in violation of a safety

17 rule and SJVR is not liable under the FELA. Defendant cites

18 *Hurley v. Patapsco & Back Rivers R.R. Co.*, 888 F.2d 327, 330 (4th

19 Cir. 1989), where the court held the injury was solely caused by

20 plaintiff's negligence, after finding plaintiff failed to provide

21 any causation link through expert testimony that inadequate

22 lighting was cause of injury. Here, it has not been established

23 conclusively that the conditions of the walkway did not

24 contribute in whole or in part to Plaintiff's injury when he

25 stepped down from the locomotive.  Plaintiff's expert opines that

26 the walkway was defective and not properly maintained.  If the

27 trier of fact finds that the conditions of the walkway violated

28 GO No. 118 and/or were unsafe, the analysis proceeds to whether

**22**

any defect or violation was in part or in whole the cause of Plaintiff's injury.  There is a genuine issue of material fact for trial as to the cause of Plaintiff's injury.

**D.   Plaintiff's Motion to Strike**

   **I.   Motion to Strike**

   Rule 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading." Fed. R. Civ. P. 12(f). "A motion to strike matters that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon." *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v. Board of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975)).  Motions to strike are disfavored and infrequently granted. *Pease & Curren Refining, Inc. v. Spectrolab, Inc.*, 744 F.Supp. 945, 947 (C.D. Cal. 1990), abrogated on other grounds by *Stanton Road Assocs*. *v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir. 1993).  Such motions should be granted only where it can be shown that no evidence in support of an allegation is admissible. *Id.*

   **a.   Federal Rules of Evidence**

   Plaintiff moves to strike evidence under California Evidence Code §§ 350 and 352.  Plaintiff brought this matter in federal court therefore, an analysis under Federal Rules of Evidence is appropriate.  The equivalent Federal rules of evidence are 401 and 403:

   California Evidence Code §§ 350 and 352:

   (A) No evidence is admissible except relevant evidence. Cal. Evid.Code § 350.

**23**

1    (B) The court in its discretion may exclude evidence if its

2   probative value is substantially outweighed by the probability

3   that its admission will (a) necessitate undue consumption of time

4   or (b) create substantial danger of undue prejudice, of confusing

5   the issues, or of misleading the jury. Cal.Evid.Code § 352

6    Federal Rules of Evidence 401 and 403:

7    (A) Relevant evidence" means evidence having any tendency to

8   make the existence of any fact that is of consequence to the

9   determination of the action more probable or less probable than

10  it would be without the evidence. Fed.R.Evid.401.

11   (B) Although relevant, evidence may be excluded if its

12  probative value is substantially outweighed by the danger of

13  unfair prejudice, confusion of the issues, or misleading the

14  jury, or by considerations of undue delay, waste of time, or

15  needless presentation of cumulative evidence. Fed.R.Evid.403.

16  **II.  Plaintiff's Motion to Strike Wayne R. Sims' Declaration
     ¶¶ 5 through 8**

17  Plaintiff moves to strike as irrelevant under California

18  Evidence Code § 350 (*equivalent* Federal Rules of Evidence 401)

19  all references in paragraphs 5 through 8 of Wayne R. Sims

20  declaration regarding Plaintiff's failure to designate an expert

21  witness. (Doc. 15, Plaintiff's Evidentiary Objections, p. 1:23-

22  25.)  Plaintiff asserts that the parties agreed to continue the

23  date for disclosing experts until August 10, 2007.  Plaintiff

24  provides a letter memorializing this agreement that was mailed

25  and faxed to Defendant's attorney Wayne R. Sims and Plaintiff

26  timely disclosed Stanton as Plaintiff's expert. (Doc. 14-3, Decl.

27  Furstenthal, Exhibit 8, Letter of July 20, 2007 from John

28

**24**

Fustenthal to Wayne R. Sims, Re: Expert Disclosure Witness.)
Plaintiff's motion is **GRANTED.**

### III. **Plaintiff's Motion to Strike Frederick Mattera's Declaration ¶¶ 3 through 6**

Plaintiff moves to strike as irrelevant under California Evidence Code § 350 and 352 (*equivalent* Federal Rules of Evidence 401 and 403), paragraphs 3, 4 and 5, of Mattera's declaration relating to safety rules, safety procedures manual and no history of prior complaints of area of accident. Plaintiff asserts that Defendant was in violation of GO No. 118 and as such FELA liability is absolute. (Doc. 15, Plaintiff's Evidentiary Objections, p. 2:3-20.)  This is a legal conclusion and has no effect.  An objection to the admissibility of the testimony is the appropriate remedy.  Plaintiff's motion is **DENIED.**

Plaintiff moves to strike as irrelevant under California Evidence Code § 350 and 352 (*equivalent* Federal Rules of Evidence 401 and 403) paragraph 5 of Mattera's declaration regarding SJVR receiving no prior complaints of such conditions in the area prior to the accident.  Plaintiff asserts Defendant violated GO No. 118, and therefore liability is absolute. (Doc. 15, Plaintiff's Evidentiary Objections, p. 2:28, 3:1-15.) This is also an objectionable legal conclusion.  Plaintiff's motion is **DENIED.**

Plaintiff moves to strike paragraph 6 of Mattera's declaration where Mattera claims he inspected the area three days following the incident and found no defects in the footing and ballast conditions in the area.  Plaintiff asserts that he, Plaintiff, identified where he was injured in the photographs and

**25**

1  the conditions of the walkway both in his deposition testimony

2  and SJVR investigatory hearing testimony. (Doc. 15, Plaintiff's

3  Evidentiary Objections, p. 3:16-24.) Plaintiff has not proved as

4  a matter of law the conditions of the walkway and location of the

5  alleged incident.  Plaintiff's motion is **DENIED**.

6       Plaintiff moves to strike paragraph 8 of Mattera's

7  declaration as without foundation, under California Evidence Code

8  § 350 and 352 (*equivalent* Federal Rules of Evidence 401 and 403).

9  Mattera asserted in his declaration that neither Mr. Springman

10 nor Plaintiff made any claim that there were any hazardous

11 conditions and that no complaints of such hazardous conditions

12 have been made since the accident.  Plaintiff asserts that he

13 stated that his right injury ankle was caused by "loose footing"

14 and a hole or depression in the walkway at the SJVR's formal

15 investigation hearing. (Doc. 15, Plaintiff's Evidentiary

16 Objections, p. 4:3-11.)  Plaintiff has not proved as a matter of

17 law that there were hazardous conditions.  Plaintiff's motion is

18 **DENIED**.

19 //

20 //

21 //

22 //

23 //

24 //

25 //

26 //

27 //

28 //

**26**

**CONCLUSION**

For the reasons set forth above,

(1) Defendant's motion for summary judgment is **DENIED.**

(2) Defendant's objections to Plaintiff's declaration is **OVERRULED.**

(3) Defendant's objections to Plaintiff's Expert Edward Stanton's declaration is **SUSTAINED** in part and **OVERRULED** in part.

(4) Plaintiff's motion to strike ¶¶ 5-8 of Wayne R. Sims' declaration is **GRANTED.**

(5) Plaintiff's motion to strike ¶¶ 3-6, 8 of Frederick Mattera's declaration is **DENIED.**

IT IS SO ORDERED.

**Dated:     September 25, 2007              /s/ Oliver W. Wanger**
                                              UNITED STATES DISTRICT JUDGE